# Exhibit B

# Distribution Agreement

# DISTRIBUTION AGREEMENT

This Distribution Agreement (the "**Agreement**") is entered into and effective as of NOVEMBER 22, 2005 (the "Effective Date") by and between Cartesian Products, Inc., a Massachusetts corporation located at 30 Wesley Street, Suite 2, Newton MA 02458 ("**CPI**") and Construction Software Technologies, Inc., an Ohio Corporation located at 4430 Carver Woods Drive, Cincinnati, OH 45242 ("**Company**").

## 1. Definitions

"**Software**" shall mean CPI's CPC decompression software development kit as defined in the Software License Agreement between CPI and Company dated September 8, 2005. "**Licensed Client**" shall mean any Company product that incorporates, or is otherwise derived from, the Software. "**Effective Year**" shall mean a year beginning on the Effective Date or anniversary thereof.

## 2. Grant of Distribution License

In exchange for the royalty payments described in this Agreement, CPI hereby grants, and Company accepts, a non-exclusive worldwide license to distribute Licensed Clients to end-users in accordance with the terms and provisions of this Agreement.

Company must distribute Licensed Clients only to end-users directly or through third party distributors and dealers on terms which are as protective of the Software as Company requires for its own software bundled in the Licensed Clients.

Company must distribute Licensed Clients with an End User License Agreement consistent with the terms and conditions of this Agreement and including the following: (i) a prohibition on decompiling, reverse engineering, disassembling, or otherwise reducing Licensed Clients to a human readable form; (ii) an acknowledgement that Company and/or its licensors retain title to the Licensed Clients; (iii) a disclaimer of warranties by CPI; and (iv) a limitation of liability on behalf of CPI, whether for breach of a warranty of merchantability, fitness for a particular purpose, performance, infringement or for any alleged consequential or other indirect damages, to replacement of the Software.

## 3. Royalties.

For each Effective Year, Company shall pay to CPI an annual nonrefundable license fee of $2995, due on the first day of the Effective Year.

In addition, Company shall pay to CPI a royalty of $5.00 (the "**Unit Royalty Payment**") on every transfer of a copy of a Licensed Client. A "transfer" shall be deemed to occur, and royalty to accrue to CPI, at the time of initial shipment of every copy of a Licensed

Client or of every grant of a right of access or use to a Licensed Client from Company to any third party, including but not limited to distributors, dealers, and end-users.

No Unit Royalty Payment shall be due, however, if either of the following conditions apply:

> (i) the transfer is for promotional use and is provided free of any charges, either direct or indirect, for the purpose of promoting Licensed Clients; or

> (ii) the transfer is for use on a computer for which a royalty payment to CPI has already been made under the License and Distribution Agreement between CPI and Company dated June 4, 1997.

## 4. Reporting

Company will generate statements that shall account for the distributions of Licensed Clients during each quarter ending March 31, June 30, September 30, and December 31, respectively. The Unit Royalty Payments and such statements shall be due 30 days after the end of the quarter.

Company shall maintain records adequate to verify the amounts due to CPI hereunder. In the case that Company makes Licensed Clients available over networks, such records shall include automatically generated server logs of all downloads of copies of Licensed Clients. CPI or its representatives shall have the right to inspect the relevant books and records of Company as reasonably necessary to verify the correctness of the account or to determine the sums due to CPI thereunder. Such inspection shall be made during normal business hours, within 15 business days of notice in writing from CPI and no more than once each year. In the event such inspection reveals that Company has underpaid CPI by more than ten percent (10%), Company shall reimburse CPI for the costs of such inspection.

## 5. Termination.

Company may terminate this Agreement for any reason within thirty (30) days of the Effective Date upon notice received within such thirty day period, or thereafter upon sixty (60) days prior written notice. Should either party be in breach of any material provision of this Agreement, including, but not limited to, the payment of any Unit Royalty Payments, and such breach has not been cured within thirty (30) days of receipt of notice thereof, the other party may terminate this Agreement. Should either party be in breach of any material provision of this Agreement, the other party may also seek to enforce its rights in any action at law or in equity available to it. Upon termination of this Agreement, Company must cease use, reproduction and distribution of the Licensed Clients and services enabled by the Licensed Clients. Except for termination pursuant to this paragraph, this Agreement may not be terminated.

**6. Limitation of Liabilities.**

NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR SPECIAL DAMAGES, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**7. General**

**7.1. Notices.** All notices and requests in connection with this Agreement shall be deemed given as of the day they are received either by messenger, delivery service, or in the United States of America mails, postage prepaid, certified or registered, return receipt requested, and addressed as follows:

| To CPI: | To Company: |
|---|---|
| Cartesian Products, Inc. | Construction Software Technologies, Inc. |
| 30 Wesley Street, Suite 2 | 4430 Carver Woods Drive |
| Newton, MA 02458 | Cincinnati, Ohio 45242 |
| Attention: Legal Department | Attention: Mark T. Greiner |
| Phone: (617) 249-0185 | Phone: (513) 645-8004 x8209 |

or to such other address as a party may designate pursuant to this notice provision.

**7.2. Governing Law.** This Agreement shall be deemed a contract made and performed in Massachusetts, shall be construed under and governed by the laws of the Commonwealth of Massachusetts, and shall bind the parties, their successors, and assigns.

**7.3. Arbitration.** The parties shall engage in good faith efforts to resolve any disputes that may arise between them under this Agreement by any means that they mutually deem appropriate. Any controversy or dispute between the parties concerning this Agreement that cannot be resolved by the parties shall be submitted to arbitration under the rules and regulations of the American Arbitration Association. Either party may invoke this paragraph after providing 30 days' written notice to the other party. All costs of arbitration shall be divided equally between the parties. Judgment upon the award rendered may be entered in and enforced by any court having jurisdiction.

**7.4. Severability.** If any provision of this Agreement shall be held by a court of competent jurisdiction to be void, invalid, or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court of competent jurisdiction finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**7.5. Waiver of Compliance.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to

subsequently enforce and compel strict compliance with every provision of this Agreement.

**7.6. Assignment.** This Agreement shall be binding on any successors of the parties. Company shall not have the right to assign its interests in this Agreement to any other party, except in connection with a sale of the business to which this Agreement relates.

**7.7 Export.** Company shall not export the Licensed Clients except in compliance with the United States export laws and regulations.

**7.8 Government Rights.** If the Licensed Clients are acquired by or on behalf of a unit or agency of the United States Government, the Government agrees that such Licensed Clients are "commercial computer software" and that, absent a written agreement to the contrary, the Government's rights with respect to such Licensed Clients are limited by the terms of this Agreement, pursuant to FAR §12.212(a) and/or DFARS §227.7202-A(a), as applicable.

**7.9. Entire Agreement.** This Agreement contains the entire agreement between the parties hereto. No verbal agreement, conversation, or representation between any officers, agents, or employees of the parties hereto, either before or after the execution of this Agreement, shall affect or modify any of the terms or obligations herein contained.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the Effective Date written above.

| **COMPANY** | **CARTESIAN PRODUCTS, INC.** |
|---|---|
| _[signature]_ | _[signature]_ |
| By (sign) | By (sign) |
| DAVE CONWAY | PETER MARK |
| Name (print) | Name (print) |
| PRESIDENT/CEO | President |
| Title | Title |
| 11-22-05 | 12/1/05 |
| Date | Date |